UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASJEET DHILLON, KAMAL CREATIONS, INC., JASJEET DHILLION, INC., J AND K CONVENIENCE STORE, INC., JASSI AND MIRNA, INC., and K & A CONVENIENCE STORES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>7-ELEVEN, INC., KIA HASHEMINEJAD, TIMOTHY HALL, BOBBIE KING, DOES 1-10, SEJ ASSET MANAGEMENT & INVESTMENT COMPANY, INC., SEVEN-ELEVEN JAPAN CO., LTD, and SEVEN & I HOLDINGS, CO., LTD,<br><br>Defendants. | Case No.: 3:23-cv-02335-JES-JLB<br><br>**ORDER:**<br><br>**(1) DISMISSING THE FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 27]** |

Plaintiffs Jasjeet Dhillon ("Dhillon") and Kamal Creations, Inc., Jasjeet Dhillon, Inc., J and K Convenience Store, Inc., Jassi and Mirna, Inc., and K & A Convenience Stroes, Inc. (collectively, the "Entity Franchisees") (collectively, "Plaintiffs") bring the instant action against Defendants 7-Eleven, Inc., Kia Hasheminejad ("Hasheminejad"), Timothy Hall ("Hall"), Bobbie King ("King"), SEJ Asset Management & Investment

Company, Inc., Seven-Eleven Japan Co., LTD, Seven & I Holdings, Co., Ltd. (collectively, "7-Eleven" or "Defendants"). Defendants move to dismiss Plaintiffs' First Amended Complaint ("FAC"), ECF No. 23. For the reasons stated herein, the FAC is **DISMISSED** for lack of subject matter jurisdiction and Defendants' motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

### A. Factual Background

Dhillon is the owner or co-owner of the Entity Franchisees. FAC ¶ 21. The Entity Franchisees each entered into one or more franchise agreements with 7-Eleven (the "Franchise Agreements"), granting them conditional licenses to operate a total of nine 7-Eleven® brand convenience stores (the "Stores"). *Id.* ¶¶ 16-20. Eight of the nine Franchise Agreements include a Texas choice of law provision. ECF No. 27-3 at 42, ¶ 30(a). The other franchise agreement is governed by California law. ECF No. 27-4 at 37, ¶ 30(a). Dhillon signed the Franchise Agreements as the Entity Franchisees' President and Secretary, and personally guaranteed their performance under those Agreements. *See* ECF No. 27-3 at 46, 212-214; ECF No. 27-4 at 41, 51-52.

The Franchise Agreements allow for termination "immediately upon notice" if they committed four or more material breaches within a two-year period. *See* ECF No. 27-3 at 34-35, ¶ 26(a)(10); ECF No. 27-4 at 32-33, ¶ 26(b). The eight Franchise Agreements governed by Texas law also allow for immediate termination, without opportunity to cure, if:

> (1) Plaintiffs "fail to comply with any federal, state, or local wage and hour law, or fail to comply with any federal, state, or local law related to any employment or immigration matter"; or

> (2) 7-Eleven has "evidence that [Plaintiffs] have engaged in any dishonest, unethical, immoral, or similar conduct as a result of which [their] association with the store could, in [7-Eleven's] sole opinion, have a material adverse effect on the goodwill associated with the 7-Eleven System or the 7-Eleven Marks."

ECF No. 27-3 at 34-35, ¶¶ 26(a)(3), 26(a)(7).

On December 5, 2023, 7-Eleven's Southwest Region Director, Defendant Hasheminejad, asked Dhillon to meet him at a hotel on December 7, 2023 (the "Meeting") to discuss Dhillon's alleged breaches of the Franchise Agreements. FAC ¶ 23. Hasheminejad asked Dhillon if he planned to bring a lawyer with him to the Meeting. *Id.* On December 6th, Hasheminejad sent a text message to Dhillon, stating: "we will plan to have counsel in the meeting if you are bringing an attorney, but otherwise may have counsel standing by to consult as needed." *See Id.* ¶ 24. Dhillon elected not to bring legal counsel. *Id.* ¶ 26.

Upon arrival at the hotel for the Meeting, Dhillon was surprised to learn, that in addition to Hasheminejad, 7-Eleven's Director of Asset Protection, Defendant Hall, would be joining. *Id.* ¶ 27. Defendant Hall asked Dhillon if he was carrying a gun, to which Dhillon replied "no." *Id.* ¶ 28. Despite his response, Defendant Hall demanded to frisk Dhillon. *Id*. Dhillon advised that he did not consent to such a search. *Id*. Defendant Hall frisked Dhillon and allegedly forced Dhillon to pull his pants up to show that he was not carrying any guns. *Id*.

Defendants Hasheminejad and Hall advised Dhillon that he had breached the Franchise Agreements and presented him with written Notices of Material Breach (the "Breach Notices") with respect to each of the Franchise Agreements and Stores. *Id.* ¶ 29. Hasheminejad and Hall also informed Dhillon that 7-Eleven was prepared to immediately terminate the Franchise Agreements and presented him with Termination Notices with respect to each agreement. *Id.* The Breach Notices advised Dhillon that his unlawful conduct and multiple material breaches of the Franchise Agreement constituted good cause and sufficient grounds for the immediate termination of those Agreements. *Id.*; ECF No. 27-5 at 2-4; ECF No. 27-6 at 2-4.

Hasheminejad and Hall further advised Dhillon that he had the option to avoid immediate termination by agreeing to cede management of the Stores to 7-Eleven, while he attempted to sale his interest in those stores. FAC ¶ 29. Dhillon, with respect to seven

of the Stores, signed a Termination Agreement with Goodwill Sales Opportunity (the "Termination Agreement") and a Store Management Agreement (the "Management Agreement"). *Id.*

After speaking with his counsel, Dhillon ultimately declined his option to sign similar agreements regarding the other two Stores. *Id.* He then left the meeting. *Id.* Later that evening, Defendant King informed Dhillon's business partners that, as a result of Dhillon's material breaches and decision not to accept the option to avoid immediate termination, the Franchise Agreements for those two Stores were terminated. *Id.* ¶ 30.

**B.     Procedural Background**

On December 15, 2023, Plaintiffs filed the instant lawsuit against Defendants in the San Diego Superior Court. ECF No. 1-3. Defendants, on December 26, 2023, then removed the case to this Court on diversity grounds. ECF No. 1. In their Notice of Removal, Defendants argue that the initial complaint asserts tort claims against Hasheminejad and King, citizens of California, in an attempt to defeat diversity jurisdiction. *Id.* at 5. Plaintiffs did not move for remand, and instead filed an Ex Parte Motion for Temporary Restraining Order ("TRO"), which this Court denied. ECF Nos. 5, 19. On February 28, 2024, Defendants filed their first motion to dismiss. ECF No. 22. In lieu of opposing that motion, Plaintiffs filed the FAC. The FAC continues to assert claims against Hasheminejad and King. *See* FAC ¶¶ 137-158.

## II.     LEGAL STANDARD

**A.     Subject Matter Jurisdiction**

The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Removal jurisdiction is governed by 28 U.S.C. § 1441, *et seq.* A state court action can be removed if it could have originally been brought in federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a party invoking the federal removal statutes must establish jurisdiction by demonstrating the

existence of: (1) a statutory basis; (2) a federal question; or (3) diversity of the parties. *See Mir v. Fosburg*, 646 F.2d 342, 345 (9th Cir. 1980). District courts must construe the removal statutes strictly against removal and resolve any uncertainty as to removability in favor of remanding the case to state court. *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). The burden is on the removing party to demonstrate federal subject matter jurisdiction over the case. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

Federal diversity jurisdiction requires that the parties be citizens of different states and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The presence of any single plaintiff from the same state as any single defendant destroys "complete diversity" and strips the federal courts of original jurisdiction over the matter. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

If the court lacks subject matter jurisdiction, any action it takes is ultra vires and void. *See Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 101-02 (1998). The lack of subject matter jurisdiction may be raised at any time by either the parties or the court. Fed. R. Civ. P. 12(h)(3). If subject matter jurisdiction is found to be lacking, the court must dismiss the action, *id.*, or remand pursuant to 28 U.S.C. § 1447(c). A court may raise the question of subject matter jurisdiction *sua sponte. See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

**B.     Motion to Dismiss**

A motion to dismiss for failure to state a claim should be granted when the allegations do not "state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *see Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). While the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Iqbal*, 556 U.S. at 678-79.

### III.   DISCUSSION

**A.   Subject Matter Jurisdiction**

Dhillon asserts tort claims against Defendants 7-Eleven, Hasheminejad, Hall, and King. FAC ¶¶ 137-158. Hasheminejad and King, however, are citizens of California, and destroy diversity jurisdiction. In their Notice of Removal, 7-Eleven argues that Dhillon asserted baseless claims against Hasheminejad and King to destroy diversity jurisdiction. ECF No. 1 at 3-4. Now, in their Motion to Dismiss, 7-Eleven argues that Dhillon has effectively abandoned those claims through his failure to bring a motion to remand and his affirmative choice to move forward in federal court with his motion for TRO. ECF No. 27-1 at 23. In response, Dhillon argues that no penalty should apply because he "opted to not challenge removal and instead [is] willing to litigate in federal court." ECF No. 29 at 22.

    Neither Dhillon's willingness nor 7-Eleven's abandonment argument establish subject matter jurisdiction. The Court must first determine whether it may disregard the non-diverse parties. The Ninth Circuit has held that a federal court may disregard a non-diverse party named in the state court action if the court finds that the plaintiff has not adequately stated a cause of action against a resident defendant and the failure is obvious according to the well-settled authority of the state. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). There is generally a presumption against fraudulent joinder, and the removing defendant bears a significant burden of demonstrating with clear and convincing evidence that the non-diverse party's joinder was improper. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). The standard for establishing fraudulent joinder is not whether the plaintiff will "actually or even probably prevail on the merits," but whether there is any possibility the plaintiff will be able to establish liability against the defendant in question. *Mayfield v. Aerotek, Inc.*, No. 3:20-cv-01947-JAH-JLB, 2022 WL 2670629, at *3 (S.D. Cal. July 11, 2022) (quoting *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). In doing so, the court resolves all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party. *Id.*

    Dhillon asserts three tort claims against the non-diverse Defendants: (1) battery; (2) false imprisonment; and (3) intentional infliction of emotional distress ("IIED"). The Court addresses each in turn.

    **1.**    ***Battery***

    Under California law, a battery occurs when "(1) [a] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to the plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526 (2009) (citation omitted).

    Dhillon's battery claim arises from Defendant Hall's nonconsensual frisking of him. *See* FAC ¶¶ 28, 137-145. Defendants, however, argue that the FAC does not show

any facts that Hasheminejad, a diversity destroying defendant, touched Dhillon or caused him to be touched, or that any Defendant intended to harm or offend him. ECF No. 27-1 at 23. Defendants are misguided. A party who has been injured by a battery "may recover damages not only from the actual assailant, but from any other person who aids, abets, counsels or encourages the assault." *Ayer v. Robinson*, 163 Cal. App. 2d 424, 428 (1958). Dhillon's allegations that Hasheminejad lured him to the Meeting, and was present during the frisk, are sufficient to allege an "aiding and abetting" claim. Further, in view of the FAC's plausible allegation that the nonconsensual frisking incident could constitute a battery, whether a reasonable person would find Hall's contact to be harmful or offensive, and whether Hall and Hasheminejad acted with intent, are not suited for resolution on the pleadings. *See Bolbol v. Rowell Ranch Rodeo, Inc.*, No. 23-CV-01652-VC, 2024 WL 3925705, at *3-4 (N.D. Cal. Aug. 22, 2024). Thus, the Court finds that Dhillon has alleged a plausible battery claim, and that its possible for him to establish liability against Hasheminejad.

### 2. *False Imprisonment*

"A person is falsely imprisoned if he or she is wrongfully deprived of his or her freedom to leave a particular place by the conduct of another." *Martensen v. Koch*, 942 F. Supp. 2d 983, 1001 (N.D. Cal. 2013) (quoting *Snyder v. Evangelical Orthodox Church*, 216 Cal. App. 3d 297 (1989)). "In California, ... the elements of false imprisonment are: '1) the nonconsensual, intentional confinement of a person, 2) without lawful privilege, and 3) for an appreciable period of time, however brief.'" *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1204 (9th Cir. 2003) (quoting *Easton v. Sutter Coast Hosp.*, 80 Cal. App. 4th 485, 496 (2000)).

No facts raised in the FAC suggests that Dhillon was not free to leave during the Meeting. There are no allegations that, once Dhillon entered the hotel, Defendants took any measure to prevent him from leaving, or that Dhillon was unable to escape Defendants' vicinity (or was unaware of the means of escape). Instead, the FAC alleges that Dhillon "opted to go to the meeting on his own" and "exited the meeting" on his

own, after refusing to sign termination agreements. FAC ¶¶ 26, 29. Moreover, the FAC alleges that Dhillon went outside during the Meeting and had an opportunity to speak with an attorney, presumably outside of the presence of Defendants. *Id.* ¶ 29. These allegations do not support a plausible claim that Dhillon was "confined" during the Meeting. Therefore, the Court finds that Dhillon cannot maintain a plausible claim for false imprisonment.

### 3.  *Intentional Infliction of Emotional Distress*

To state a claim for IIED, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (internal quotations and citations omitted). Conduct is "outrageous" if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* "California courts have set a high bar for emotional distress claims, requiring 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Lust v. State Farm Mut. Auto. Ins. Co.*, No. 2:11-CV-02051-MCE, 2012 WL 592060, at *3 (E.D. Cal. Feb. 22, 2012) (quoting *Kelley v. Conco Cos.*, 196 Cal. App. 4th 191, 215-16 (2011)).

Dhillon fails to meet the high bar set for emotional distress claims. Dhillon's IIED claim appears to center on allegations that Defendants lured him to Meeting without an attorney, sprung unproven claims upon him after an unwanted frisking, and demanded he sign termination agreements. ECF No. 29 at 23. However, these allegations are directly contradicted by other allegations present in the FAC. Notably, Dhillon was given the option to bring an attorney, *see* FAC ¶ 24, 26, Dhillon spoke with his own counsel during the Meeting, *id.* ¶ 29, and Dhillon refused to sign some of the termination agreements, *id.* Nothing in the FAC raises to an extreme or outrageous level such that an IIED claim is warranted. Thus, the Court finds that Dhillon cannot maintain a plausible claim for IIED.

Because its plausible that Dhillon can allege a battery claim against a nondiverse defendant, the Court finds it lacks diversity jurisdiction over this matter. For this reason alone, it **DISMISSES** the FAC in its entirety.

**B.    Motion to Dismiss**

In the interests of justice and to preserve judicial resources, the Court will nonetheless address Defendants' Motion to Dismiss.

    1.    *Choice of Law*

As a threshold matter, the parties dispute whether Texas or California law governs Plaintiffs' contract claims. "In determining the enforceability of a choice of law provision in a diversity action, a federal court applies the choice of law rules of the forum state, in this case California." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). "If the parties state their intentions in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention." *Id.* (quoting *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1450 n. 7 (2007)). In California, a voluntarily agreed-upon choice of law provision in a contract is enforceable "if the chosen state has a substantial relationship to the parties or the transaction or any other reasonable basis exists for the parties' choice of law." *Trust One Mortg. Corp. v. Invest Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1308 (2005).

Here, the Franchise Agreements provide "all controversies, disputes or claims arising from or relating to this agreement or its validity, will be governed…under the laws of the State of Texas…" ECF No. 27-3 at 42 ¶ 30(a). The parties, therefore, have agreed that the laws of the State of Texas apply to claims arising out of the Franchise Agreements, and no evidence has been given to the contrary. Having determined the parties' intentions to apply Texas law, the Court next analyzes "whether (1) the chosen jurisdiction has a substantial relationship to the parties or their transaction; or (2) any other reasonable basis for the choice of law provision exists." *Hatfield*, 564 F.3d at 1182.

The fact that 7-Eleven is a Texas company is sufficient to establish a substantial relationship between Texas and the parties, such that there is a reasonable basis for

applying the Texas choice of law provision. *See id.* at 1183. The question remaining before the Court is whether applying Texas law here is contrary to California public policy. In particular, the Court must decide whether application of Texas law violates the California Franchise Relations Act ("CFRA"), Bus. & Prof. Code § 20000 *et seq*.

The CFRA provides protections for franchisees in the event of termination or non-renewal. Generally, under the California Franchise Investment Law ("CFIL"), a franchisor is required to provide a franchisee at least sixty days to remedy violations of a franchise agreement before the agreement can be terminated. Cal. Bus. & Prof. Code § 20020. However, under certain circumstances, a franchise agreement can be terminated immediately. *See* Cal. Bus. & Prof. Code § 20021. A contract that incorporates California's franchise policy may otherwise be governed by the choice of another state's laws. *See Century 21 Real Estate LLC v. All Prof. Realty, Inc.*, 600 F. 502, 504 (9th Cir. 2015).

The parties dispute whether the CFRA and the Franchise Agreements have parallel provisions permitting 7-Eleven to terminate without notice or opportunity to cure. Section 20021(d) of the CFRA and Paragraph 26(a)(7) of the Franchise Agreements both allow for immediate termination where the franchisee engages in conduct which reflects materially and unfavorably upon the franchise. The Franchise Agreements, however, include language that 7-Eleven could terminate a franchisee when its conduct, "in [7-Eleven's] sole opinion," has a material adverse effect on the reputation of 7-Eleven. Dhillon argues that this language allows 7-Eleven to terminate a franchise agreement based on conduct "it subjectively believes to be in violation of its own morals or ethics code." ECF No. 29 at 9. While this provision of the Franchise Agreements includes subjective language, reading the provision as a whole, it conforms with the CFRA. Under both provisions, the franchisor has authority to determine whether the conduct reflects unfavorably but both provisions also require that such unfavorable or adverse reflection be material. Thus, the Court finds the choice of law provisions present in the Franchise Agreements valid and enforceable.

Because the Court finds that Texas law governs Plaintiffs' contract claims, it dismisses all contract claims brought pursuant to California law, including Plaintiffs' recission claims[1], wrongful termination claims brought under the CFRA[2], and breach of contract claims[3] brought under the CFRA. *See* FAC ¶¶ 38-101.

### 2. *Conversion*[4]

7-Eleven asserts that the economic loss doctrine bars Plaintiffs' claims for conversion. ECF No. 27-1 at 21-22. The economic loss rule prevents "recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 922 (2022) (citations omitted). "Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule. But such claims are barred when they arise from – or are not independent of – the parties' underlying contracts." *Id.* at 923. California courts reason that "the economic loss rule prevents the law of contract and the law of tort from dissolving into one another" and "requires a [plaintiff] to recover in

---

[1] On a separate note, equitable recission is "not a separate cause of action; it is an equitable remedy that extinguishes legally valid contracts that must be set aside because of fraud, mistake, or other reasons in order to avoid unjust enrichment." *Matter of Marriage of I.C. & Q.C.*, 551 S.W.3d 119, 215 (Tex. 2018).

[2] Its unclear whether Plaintiffs may bring wrongful termination claims. 7-Eleven agreed to not exercise its option to immediately terminate the agreement without opportunity to cure if Dhillon signed the Termination Agreement. FAC ¶ 29. For seven of the stores, Dhillon agreed to the Termination Agreement. *Id.*

[3] Plaintiffs assert five materially identical claims alleging that 7-Eleven "breached the franchise agreement when it improperly terminated the written franchise agreement without any opportunity to cure." FAC ¶¶ 75, 81, 87, 93, 99. On a separate basis, Plaintiffs' breach of contract claims fail because Plaintiffs do not identify specific provisions of the Franchise Agreements that were allegedly breached by 7-Eleven. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d. 587, 602 (N.D. Tex. 2014) ("[A] plaintiff must identify a specific provision of the contract that was allegedly breached.") (citations omitted).

[4] The Court analyzes Plaintiffs' conversion claims under California law. *See Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) ("Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state.") (citations omitted).

contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

Here, Plaintiffs' conversion claims center around 7-Eleven's wrongful termination of their rights under the Franchise Agreements. FAC ¶¶ 103-07. Indeed, Plaintiffs allege that 7-Eleven committed conversion by "illegally terminating the franchise[s] and denying [Plaintiffs'] [their] franchise[s], including the right to possess and operate the franchise[s]." *Id.* ¶¶ 102-136. Such claims clearly sound in contract and are barred by the economic loss rule.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that subject matter jurisdiction does not exist because complete diversity cannot be established. Accordingly, the Court **DISMISSES** the first amended complaint in its entirety for lack of subject matter jurisdiction. The Court also **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss, ECF No. 27. Plaintiffs will have one final opportunity to amend their complaint without claims asserted against diversity-destroying defendants, and in accordance with this Order. In the event that Plaintiffs elect to file an amended complaint, they must do so within **fourteen (14) days** of this Order.

**IT IS SO ORDERED**.

Dated: March 4, 2025

Honorable James E. Simmons Jr.
United States District Judge